UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF MICHIGAN

NORTHERN DIVISION

- - - - - - - - - - - - - - -

| | |
|---|---|
| UNITED STATES OF AMERICA, | No.   2:08-CR-39 |
| Plaintiff, | |
| v. | Hon.   R. Allan Edgar<br>United States District Judge |
| IAN JACOB WALLACE, | |
| Defendant. | |
| _____ / | |

## PLEA AGREEMENT

This constitutes the plea agreement between IAN JACOB WALLACE and the U.S. Attorney's Offices for the Western District of Michigan, the District of Minnesota, and the Western District of Wisconsin.  The terms of the agreement are as follows:

1. <u>Defendant Agrees to Plead Guilty.</u>  The Defendant agrees to give up the right to Indictment by a grand jury and agrees to plead guilty to a Felony Information that the United States Attorney's Office shall file in accordance with paragraph 12 of this agreement.  The Felony Information shall charge Defendant with attempting to cause damage in excess of $1,000 to property of the United States, in violation of Title 18, United States Code, Section 1361.  Specifically, the Information will charge that, on or about November 5, 2001, on the campus of Michigan Technological University in Houghton County, in the Northern Division of the Western District of Michigan, Defendant attempted to damage by fire the "U.S. Forest Service Building," a structure

that was the property of the Forest Service, U.S. Department of Agriculture, an agency of the United States; and the "U.J. Noblet Forestry Building," a structure that contained materials and equipment that were the property of the Forest Service, U.S. Department of Agriculture.

2.  Defendant Understands the Crime. In order for Defendant to be guilty of violating Title 18, United States Code, Section 1361, the following must be true: (1) the Defendant must have willfully attempted to injure or commit a depredation against certain property; (2) that property must have belonged to the United States or a department or agency thereof; and (3) by his conduct, the Defendant must have attempted to cause damage in excess of $1,000. The Defendant is pleading guilty because he is guilty of the charge described above.

3.  The Defendant Understands the Penalties. The statutory maximum sentence that the Court can impose for a violation of Title 18, United States Code, Section 1361 is the following: ten years' imprisonment; a three-year period of supervised release; a fine of $250,000; and a mandatory special assessment of $100. The Defendant agrees to pay the special assessment at or before the time of sentencing unless the Defendant affirmatively demonstrates to the Court that he lacks the ability to pay.

4.  Restitution. The Defendant understands that he will be required to pay full restitution to the victims of the offenses that are detailed in paragraph 5 of this agreement. The Defendant expressly agrees that, although the offense that he is pleading guilty to did not result in a financial loss because the attempted destruction failed, it was part of a pattern of criminal activity that did cause significant financial loss.

2

Accordingly, and pursuant to Title 18, United States Code, Sections 3663(a)(1)(A) and (3), the Defendant agrees that his restitution obligation should include losses suffered by parties other than the victim of the offense charged in the Felony Information. The parties currently believe that the applicable amount of restitution is $1,655,186, but recognize and agree that this amount could change based on facts that come to the attention of the parties prior to sentencing.

5.  <u>Factual Basis of Guilt and Stipulation of Relevant Facts</u>.  The Defendant and the United States agree and stipulate to the following statement of facts which need not be proven at the time of the plea or sentencing:

A.  On November 4, 2001, Defendant and an acquaintance traveled by car from Defendant's residence near Minneapolis, Minnesota to Houghton, Michigan, taking with them two incendiary devices that they had constructed. They had built the devices in Defendant's residence for the express purpose of taking them to Houghton and using them to destroy two buildings, and the property located in those buildings, located on the campus of Michigan Technological University (MTU). On at least one occasion during the preceding several weeks, Wallace and his acquaintance had traveled from Minneapolis to MTU to conduct reconnaissance of their intended targets.

B.  The buildings in question were being used as locations for research into genetic engineering of plants, Defendant and his acquaintance knew this, and that was why they wanted to destroy the buildings and the property they contained. One of the buildings, known on campus as the "U.S. Forest Service Building," was the property of the Forest Service, which is an agency within the U.S. Department of Agriculture. The other structure, the "U.J. Noblet Forestry Building," was the property of MTU, but it also

contained property of the Forest Service and was a location where Federally-funded research was being conducted by Forest Service and MTU employees.

   C. Defendant and his acquaintance were motivated to target the buildings, and the research being conducted within them, by their shared belief that such research was part of the commodification and commercialization of the natural environment and, as such, was ultimately harmful to the environment. For that reason, they hoped not only to destroy the research but also, through such an act of violence, to intimidate and deter government agencies, private organizations, and the general public from conducting or supporting such research. These beliefs were consistent with the doctrine espoused by two related movements, the "Animal Liberation Front," also known as "ALF," and the "Earth Liberation Front," also known as "ELF." Both Defendant and his acquaintance had previously committed acts of property destruction on behalf of the ELF, and both were acting as agents of ELF on this occasion.

   D. The ELF was, and remains, a loosely-organized movement of individuals who are committed to the cessation of commercial, research, and other activities that its adherents consider harmful to the natural environment. ELF espouses a philosophy of what its adherents refer to as "direct action" and "monkey-wrenching," terms that denote acts of politically-motivated violence designed to intimidate or coerce segments of society, including the general civilian population, private business, and government, into changing their attitudes about environmental issues and/or ceasing activities judged by movement adherents as having a harmful impact on the natural environment. ELF direct actions include acts that violate the criminal laws of the United States or of

4

individual States and that are dangerous to human life. Arson is one of the most frequently employed forms of ELF direct action and monkey-wrenching.

  E. The devices in question were built from components that included timers, ignition sources, and gallons of highly-combustible liquids. Acting together, Defendant and his acquaintance placed the devices against the buildings between about 12:00 a.m. and 1:00 a.m. on November 5, activated the timing mechanisms, and then left the scene. However, and as a likely result of poor design and construction, both of the timer mechanisms malfunctioned and the devices failed to ignite as the two had intended. The devices were discovered later that morning at approximately 3:30 a.m. by MTU Public Safety and were subsequently made safe and removed by Michigan State Police personnel.

  F. Defendant admits that, in addition to the MTU attempt, he participated in the following acts of property destruction on behalf of ELF:

   (i) Apr. 1, 2000 - University of Minnesota, St. Paul, MN - (vandalism) vehicles and building, U.S. Forest Service, North Central Research Station, St. Paul Annex; loss $25,186.

   (ii) Jul. 20, 2000 - Rhinelander, WI - (property destruction) 500 research trees, U.S. Forest Service, North Central Research Station, Forestry Sciences Laboratory; loss $1,000,000.

   (iii) Jan. 26, 2002 - University of Minnesota, St. Paul, MN - (arson) Cargill Building for Microbial and Plant Genomics construction site; loss $630,000.

  G. Based on the foregoing, and consistent with Paragraph 4, Defendant

stipulates and admits that the property destruction attributable to his pattern of criminal activity on behalf of ELF exceeded $1,000,000 but was less than $2,500,000, and that the offense charged in the Information involved, or was intended to promote, a "Federal crime of terrorism" as that term is defined in 18 U.S.C. § 2332b(g)(5).

6. <u>The Sentencing Guidelines.</u>   The Defendant understands that, although the United States Sentencing Guidelines (the "Guidelines") are not mandatory, the Court must consult the Guidelines and take them into account when sentencing the Defendant.  The Defendant understands that the Court, with the aid of the presentence report, will determine the facts and calculations relevant to sentencing.  The Defendant understands that the Defendant and the Defendant's attorney will have the opportunity to review the presentence report and to make objections, suggestions, and recommendations concerning the calculation of the Guideline range and the sentence to be imposed.  The Defendant further understands that the Court shall make the final determination of the Guideline range that applies in this case, and may impose a sentence within, above, or below the Guideline range, subject to the statutory maximum and minimum penalties described elsewhere in this Agreement.  The Defendant further understands that disagreement with the Guideline range or sentence shall not constitute a basis for withdrawal of the plea.

7. <u>Cooperation in Criminal Investigations.</u>   The Defendant agrees to fully cooperate with the Federal Bureau of Investigation and the signatory U.S. Attorney's Offices in their investigation of the charge contained in the Information as well as the investigation of crimes over which they have actual or apparent jurisdiction. The

Defendant's cooperation will consist of all steps needed to uncover and prosecute such crimes, including, but not limited to: providing investigators with a full, complete and truthful statement concerning the Defendant's knowledge of any and all criminal activity of which he is aware; truthfully answering investigators' questions; meeting with prosecutors before testifying; truthfully testifying before grand juries and in any court proceedings; and providing all relevant tangible evidence in the Defendant's possession or under the Defendant's control, including, but not limited to, objects, documents, and photographs. The Defendant's obligation to cooperate under this paragraph is an affirmative one and includes the obligation to voluntarily come forward with any and all information which the Defendant should reasonably know will assist in the investigation of other criminal activity. The Defendant will neither commit nor assist others in the commission of any criminal offense during the course of his cooperation with the United States. The Defendant will submit to polygraph examinations upon request. The Defendant's obligation under this paragraph is a continuing one, and shall continue after sentencing until all investigations and prosecutions in which the Defendant's cooperation is deemed relevant by the signatory U.S. Attorney's Offices have been completed.

  8. <u>Waiver of Constitutional Rights.</u> By pleading guilty, the Defendant gives up the right to persist in a plea of not guilty and the right to a speedy and public trial by jury or by the Court. As a result of the Defendant's guilty plea, there will be no trial. At any trial, whether by jury or by the Court, the Defendant would have had the following rights:

7

  a.  The right to the assistance of counsel, including, if the Defendant could not afford an attorney, the right to have the Court appoint an attorney to represent the Defendant.

  b.  The right to be presumed innocent and to have the burden of proof placed on the Government to prove the Defendant guilty beyond a reasonable doubt.

  c.  The right to confront and cross-examine witnesses against the Defendant.

  d.  The right, if the Defendant wished, to testify on the Defendant's own behalf and present evidence in opposition to the charges, including the right to call witnesses and to subpoena those witnesses to testify.

  e.  The right not to be compelled to testify, and, if the Defendant chose not to testify or present evidence, to have that choice not be used against the Defendant.

 By pleading guilty, the Defendant also gives up any and all rights to pursue any affirmative defenses, including but not limited to alibi, statute-of-limitations, duress, entrapment, coercion, and insanity.  The Defendant also gives up the right to raise any Fourth Amendment or Fifth Amendment claims, and other pretrial motions that have been filed or could be filed.

 9. <u>Waiver of Appeal and Collateral Attack</u>.  The Defendant understands that the law affords him the right to appeal the sentence imposed.  Acknowledging this, the Defendant knowingly waives the right to appeal a sentence that is within the applicable guideline range as determined by the Court at sentencing and the manner in which the sentence was determined on the grounds set forth in 18 U.S.C. § 3742 or any ground whatever, in exchange for the concessions made by the United States Attorney's Office

in this plea agreement, except that the Defendant may appeal on grounds, preserved at sentencing, that the Court incorrectly determined the guideline range. The Defendant also waives the right to challenge such a sentence and the manner in which it was determined in any collateral attack, including but not limited to a motion brought under Title 28, United States Code, § 2255. This agreement does not affect in any way the right of the U.S. Attorney's Office to appeal the sentence imposed by the Court.

10.  <u>The United States Attorney's Office Agrees</u>: The U.S. Attorney's Office agrees not to oppose the Defendant's request for a two-level reduction of his offense level for acceptance of responsibility under §3E1.1(a) of the Sentencing Guidelines. However, the U.S. Attorney's Office reserves the right to object to Defendant's request if it subsequently learns of conduct by the Defendant that is inconsistent with the criteria set forth in the Commentary to Section 3E1.1. Should the Court grant a two-level reduction as provided herein, the Government states that the Defendant has assisted authorities in the investigation or prosecution of his own misconduct by timely notifying it of his intention to enter a guilty plea, thereby permitting the Government to avoid preparing for trial, and hereby moves the Court to grant an additional one-level reduction if the adjusted offense level is 16 or greater.

11.  <u>Possibility of Sentence Reduction</u>. The U.S. Attorney's Office will decide whether to file a motion for departure or reduction of sentence pursuant to USSG § 5K1.1 or Rule 35(b) of the Federal Rules of Criminal Procedure. The Defendant fully understands that such a motion may be made pursuant to law if, and only if, the Defendant fully cooperates with the United States and materially and substantially assists the Government in the investigation or prosecution of others. The determination

of whether the Defendant has provided substantial assistance to the United States will be made in the sole discretion of the United States Attorney's Office, and in determining whether to file a USSG § 5K1.1 or Rule 35(b) motion the United States Attorney's Office will take into consideration the benefits already conferred upon the Defendant in paragraph 12 of this agreement. The Defendant fully understands that this paragraph is not a promise by the Government to file such a motion. The Defendant also understands that if such a motion is filed, the Court will have complete discretion to grant or deny it and, assuming it grants the motion, to determine how much of a sentence reduction the Defendant will receive based upon the nature and extent of his assistance. The Defendant acknowledges and agrees that he may not appeal the Court's exercise of its discretion in ruling on a motion for departure or reduction of sentence, or in determining how much of a departure or reduction is appropriate if it grants either or both such motions.

12. <u>Non-prosecution Agreement</u>. The U.S. Attorney's Office for the Western District of Michigan agrees to file a Felony Information, as described in Paragraph 1 of this agreement, charging the Defendant with only a single count of violating 18 U.S.C. § 1361 (Attempted Depredation Against Property of the United States) for his misconduct relative to MTU on November 5, 2001, vice bringing charges under 18 U.S.C. §§ 844(f)(1) and (n) (Attempted Arson of United States Property and Conspiracy to Commit Same). Further, the U.S. Attorney's Offices for the Western District of Michigan, the Western District of Wisconsin, and the District of Minnesota agree to not bring additional criminal charges against the Defendant for his conduct related to the ELF or other extremist environmental or animal-rights groups,

10

organizations, or movements, provided that the conduct is disclosed to the Government by the Defendant or his attorney prior to the date that this agreement is executed. The Defendant shall remain subject to prosecution for any criminal activity that he has not disclosed to the Government prior to that date or that he might commit after that date. This promise of non-prosecution shall not include criminal tax violations (including conspiracy to commit such violations chargeable under 18 U.S.C. § 371).

13. <u>The Court Is Not a Party to This Agreement</u>. The Defendant understands that the Court is not a party to this agreement and is under no obligation to accept any recommendation by the U.S. Attorney's Office or the parties regarding the sentence to be imposed. The Defendant further understands that, even if the Court ignores such a recommendation or imposes any sentence up to the maximum established by statute, the Defendant cannot, for that reason, withdraw his guilty plea, and he will remain bound to fulfill all of his obligations under this agreement. The Defendant understands that no one – not the prosecutor, the Defendant's attorney, or the Court – can make a binding prediction or promise regarding the sentence that the Defendant will receive, except that it will not exceed the statutory maximum.

14. <u>This Agreement Is Limited to the Parties</u>. This agreement is limited to the U.S. Attorney's Offices for the Western District of Michigan, the Western District of Wisconsin, and the District of Minnesota, and cannot bind any other federal, state or local prosecuting, administrative or regulatory authority. This agreement applies only to crimes committed by the Defendant.

15. <u>This Is the Complete Agreement</u>.  This agreement has been entered into by both sides freely, knowingly, and voluntarily, and it incorporates the complete understanding between the parties.  No other promises have been made, nor may any additional agreements, understandings or conditions be entered into unless in a writing signed by all parties or on the record in open court.

                                              CHARLES R. GROSS
                                              United States Attorney
                                              Western District of Michigan

24 July 2008
Date

                                              HAGEN WALTER FRANK
                                              Assistant United States Attorney
                                              Western District of Michigan

ERIK C. PETERSON   (date)       FRANK J. MAGILL, Jr.   (date)
United States Attorney                 United States Attorney
Western District of Wisconsin      District of Minnesota

    I have read this agreement and carefully discussed every part of it with my attorneys.  I understand the terms of this agreement, and I voluntarily agree to those terms.  My attorneys have advised me of my rights, of possible defenses, of the sentencing provisions, and of the consequences of entering into this agreement.  No promises or inducements have been made to me other than those contained in this

12

15. <u>This Is the Complete Agreement.</u>  This agreement has been entered into by both sides freely, knowingly, and voluntarily, and it incorporates the complete understanding between the parties.  No other promises have been made, nor may any additional agreements, understandings or conditions be entered into unless in a writing signed by all parties or on the record in open court.

CHARLES R. GROSS
United States Attorney
Western District of Michigan


_____      _____
Date                                                                HAGEN WALTER FRANK
                                                                              Assistant United States Attorney
                                                                              Western District of Michigan


                                                                              *Frank Magill*  6/2/08
_____      _____
ERIK C. PETERSON         (date)              FRANK J. MAGILL, Jr.          (date)
United States Attorney                              Acting United States Attorney
Western District of Wisconsin                  District of Minnesota


I have read this agreement and carefully discussed every part of it with my attorneys.  I understand the terms of this agreement, and I voluntarily agree to those terms.  My attorneys have advised me of my rights, of possible defenses, of the sentencing provisions, and of the consequences of entering into this agreement.  No promises or inducements have been made to me other than those contained in this

12

15. **This Is the Complete Agreement.** This agreement has been entered into by both sides freely, knowingly, and voluntarily, and it incorporates the complete understanding between the parties. No other promises have been made, nor may any additional agreements, understandings or conditions be entered into unless in a writing signed by all parties or on the record in open court.

                                      CHARLES R. GROSS
                                      United States Attorney
                                      Western District of Michigan

| Date | HAGEN WALTER FRANK |
|---|---|
| | Assistant United States Attorney |
| | Western District of Michigan |

| _7-3-2008_ | |
|---|---|
| ERIK C. PETERSON     (date) | FRANK J. MAGILL, Jr.     (date) |
| United States Attorney | United States Attorney |
| Western District of Wisconsin | District of Minnesota |

I have read this agreement and carefully discussed every part of it with my attorneys. I understand the terms of this agreement, and I voluntarily agree to those terms. My attorneys have advised me of my rights, of possible defenses, of the sentencing provisions, and of the consequences of entering into this agreement. No promises or inducements have been made to me other than those contained in this

12

agreement. No one has threatened or forced me in any way to enter into this agreement. Finally, I am satisfied with the representation of my attorneys in this matter.

5 September 2008
Date

IAN JACOB WALLACE
Defendant

I am IAN JACOB WALLACE's attorney. I have carefully discussed every part of this agreement with my client. Further, I have fully advised my client of his rights, of possible defenses, of the sentencing provisions, and of the consequences of entering into this agreement. To my knowledge, my client's decision to enter into this agreement is an informed and voluntary one.

9/5/08
Date

EDWARD S. PANZER, Esq.
Attorney for Defendant

13