UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

_____x

UNITED STATES OF AMERICA,                    **Case No. 2:08-cr-39**

**HON. ROBERT HOLMES BELL**

Plaintiff,

-against-

IAN JACOB WALLACE,

Defendant.

_____x

## DEFENDANT'S SENTENCING MEMORANDUM

**PLEASE TAKE NOTICE:**

Ian Jacob Wallace pled guilty to taking part in attempted depredation against property of the United States.  18 U.S.C. 1362.

### A.  Sentencing Standards

In *United* States *v. Booker*, 543 US 220 (2005), the Court held that the Sentencing Guidelines are now advisory only.  On appeal, sentences within the guidelines range may be considered reasonable, and sentences which deviate from the advisory guidelines are not presumptively unreasonable.  *United States v. Ferguson*, 456 F3d 660, 664-665 (6th Cir. 2006). This (optional) appellate standard of review is not applicable at the District Court level.

Twice in recent times, the Supreme Court issued short *per curiam* opinions to ensure that lower courts understand that the *Booker* remedy means that the guidelines are really only advisory.  *Spears v. United States*, __ US __ (Docket No. 08-5721, January 21, 2009); *Nelson v. US*, __ US __ (Docket No. 08-5657, Jan 26, 2009).  In *Nelson*, the Court said:

Our cases do not allow a sentencing court to presume that a sentence within the applicable Guidelines range is reasonable.  In *Rita* we said as much, in fairly explicit terms:  "We repeat that the presumption before us is an appellate court presumption.  …[T]he sentencing court does not enjoy the benefit of a legal presumption that the Guidelines sentence should apply."  551 U.S., at 351.  And in *Gall v United States*, 552 US __, 128 S Ct 586 (2007), we reiterated that district judges, in considering how the various statutory sentencing factors apply to an individual defendant, "MAY NOT PRESUME THAT THE Guidelines range is reasonable." *Id.*

In this case, the Court of Appeals quoted the above language from Rita but affirmed the sentence anyway after finding that the District Judge did not treat the Guidelines as mandatory.  That is true, but beside the point.  The Guidelines are not only not mandatory on sentencing courts; they are also not to be presumed reasonable.  We think it plain from the comments of the sentencing judge that he did apply a presumption of reasonableness to Nelson's Guidelines range.  Under our recent precedents, that constitutes error.  (Slip Opinion, at pp. 2-3).

After *Gall* and *Kimbrough v. United States*, 552 US __, 128 S. Ct. 558, 570 (2007), and now *Spears* and *Nelson*, the Court appears concerned by how prominent the federal sentencing guidelines remain in both district and circuit sentencing decision-making.  Through *Spears* and now *Nelson*, the Justices have made extra efforts to indicate to lower courts that they need not kept gravitating toward (or defaulting to) the guidelines.

In reaching a sentence, a District Court must consider the parties' arguments, the advisory guidelines range, and the factors in 18 USC 3553(a).  *Gall v. United States, supra.  Gall* expressly rejected "an appellate rule which requires 'extraordinary' circumstances to justify a sentence outside the Guidelines range."  128 S Ct at 595.  After reviewing the 3553(a) factors, under the so-called parsimony provision, district courts must impose "a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in" 3553(a)(2).  18 USC 3553(a).  *United States v. Foreman*, 436 F3d 638, 644, fn.1 (6th Cir. 2006).

A district court can impose a sentence lower than the guidelines range through either a Guidelines departure or a variance.  Departures based upon Chapter 5 of the Guidelines are

referred to as Guidelines departures, and sentences lower than the Guidelines based upon 3553(a) factors are referred to as non-Guidelines departures, or variances. *United States v. Cousins*, 469 F3d 572, 577 (6th Cir. 2006).

    B.  **Guidelines Scoring**

    1.  **Terrorism Enhancement**

The Presentence Report scores the sentencing guidelines at 292 to 365 months principally because of the application of the terrorism enhancement, USSG 3A1.4.  That enhancement increases the Criminal History Category from I to VI and the Offense Level from 24 to 30 months.[1]  Defendant objects to imposition of the terrorism enhancement, on the grounds that this case is far outside the heartland of cases the enhancement is intended to cover.[2]

Application of the enhancement in this case increases the guidelines range sevenfold on the minimum for Mr. Wallace who is otherwise Application of the enhancement to this case here is a poor fit, when one considers this case, the legislative history of the enhancement, its effect upon the range and the method of its adoption.  It grossly overstates both the seriousness of the offense and Defendant's criminal history.  In addition, since the enhancement was not adopted by the Sentencing Commission in it's empirically based institutional role but instead upon Congressional directives, the enhancement is due less deference by the court in determining the sentence.[3]

The terrorism enhancement was initially adopted in response to the first World Trade Center bombing in 1993, when a car bomb was detonated below Tower One of the World Trade

---

[1]    The Government scores the Guidelines at 292 to 365 months.

[2]    The objection may be characterized as a request for a downward departure or variance.

[3]    A detailed history of the amendment is included in *United States v. Graham*, 275 F3d 490, 524 ff (6th Cir. 2001, Cohn, District Judge, dissenting.

Center in New York City.  The 1,500 lb (680 kg) urea nitrate-hydrogen gas enhanced device was intended to knock the North Tower into the South Tower, bringing both towers down and killing thousands of people.  It failed to do so, but did kill six people and injured 1,042.  The most startling but unrealized plan of those conspirators was to set off five bombs in 10 minutes, blowing up the United Nations, the Lincoln and Holland tunnels, the George Washington Bridge and a federal building housing the FBI.

Initially, the enhancement did not apply to purely domestic crimes but only those having an international connection.  The enhancement was amended to include domestic crimes after the Oklahoma City bombing on April 19, 1995, of the Alfred P. Murrah Federal Building.  That bombing claimed 168 lives and left over 800 people injured.

A major problem with the enhancement is that it provides no gradations. It makes no distinction between truly terroristic acts and the offense conduct in this case. That lack of distinction, lumping together offenses such as in this case with the cases which led to its adoption, tends to belittle the truly horrific events and demean the term.

Counsel is not aware of any comprehensive compilation of how often the enhancement has been applied. However, it appears that in the past eight years the government has sought its application against approximately sixty individuals, according to Sentencing Commission and court records.[4]  Many of those cases fit the concept of terrorism that the public has come to know since the September 11, 2001, bombings: indiscriminate assaults on civilian populations, often inspired by fundamentalist religious ideology, and intended to cause mass casualties.  Most of the cases to which the enhancement has been applied involve murder, intent to murder, or support of homicidal terrorist organizations. The Justice Department does not appear to have a

---

[4]     There is no way to determine how many times the government has unsuccessfully sought its application.

public position on when the enhancement is sought, leaving the decision to seek it on a case by case basis, and, in purely domestic crimes, up to individual US Attorneys.

Finally, the manner in which the enhancement was adopted allows the Court discretion to determine that it fails to achieve the purposes of 18 USC 3553(a) in this case. A court may consider arguments that a particular guideline fails properly to reflect § 3553(a) considerations, reflects an unsound judgment, does not treat defendant characteristics in the proper way, or that a different sentence is appropriate regardless. *Rita v. United States*, 127 S. Ct. 2456, 2465, 2468 (2007). Judges "may vary [from Guidelines ranges] based solely on policy considerations, including disagreements with the Guidelines," *Kimbrough v. United States*, 128 S. Ct. 558, 570 (2007) (internal quotation marks omitted), and when they do, the courts of appeals may not "grant greater fact finding leeway to [the Commission] than to [the] district judge." *Rita* , 127 S. Ct. at 2463.

Whatever respect a guideline may deserve depends on whether the Commission acted in "the exercise of its characteristic institutional role." *Kimbrough*, 128 S.Ct. at 575.  This role has two basic components:  (1) reliance on empirical evidence of pre-guidelines sentencing practice, and (2) review and revision in light of judicial decisions, sentencing data, and comments from participants and experts in the field. *Rita*, 127 S. Ct. at 2464-65.  "Notably, not all of the Guidelines are tied to this empirical evidence." *Gall v. United States*, 128 S. Ct. 586, 594 n.2 (2007).  When a guideline is not the product of "empirical data and national experience," a sentencing court is free to conclude that it fails to achieve the *§3553(a)*'s purposes, even in "a mine-run case." *Kimbrough*, 128 S. Ct. at 575.  As noted above, t his case is not a typical case in which the enhancement applies.

The legislative history of the terrorism enhancement clearly indicates it was not adopted by the Commission in the exercise of its characteristic institutional role, based on empirical evidence and data, but instead in response to Congressional directives and events.    *United States v. Graham, supra*.  As such it is among the guidelines regarding which a sentencing court has wider discretion to conclude that it truly does not fit a particular case.

Defendant maintains the Court should conclude the enhancement does not fit here and should not be applied.  The conduct here, where there was a specific intention to do no harm to any living thing, cannot be equated with deliberate attempts to commit murder.

In the alternative, Defendant maintains that the Court should conclude the case is appropriate for a guidelines departure, or a downward variance from the Guidelines range, on the grounds that the enhancement overstates Defendant's criminal history and the seriousness of the offense.[5]

I have received the government's 5K.I letter as of this date.   The Government recommends a 4 step reduction from 120 months to (70-87 months).

The probation officer has recommended 120 months (that is the maximum sentence for the crime that Mr. Wallace has pled guilty to.  Defendant maintains that recommendation is far beyond what is necessary in this case.  Unfortunately, the inflexibility and extremity of the terrorism enhancement provides little assistance to the court in determining the appropriate sentence here.

---

[5]    Defense counsel believes the government concedes that in this case the enhancement overstates the seriousness of the offense and/or Mr. Wallace criminal history, or both.  USSG 5k2.0.

2.  **Correction to the Presentence Report**

Defendants letter of objections submitted 3/17/09 and correction is attached to this memorandum.  The Court should resolve the questions of fact and/or order the report amended. FRCRP 32(h)(3).  To date, I have not received a response.

C. **Appropriate Sentence**

In the case of *Gall v. United States*, 552 U.S. __, 128 S.Ct. 586 (2007), the Supreme Court affirmed a District Court sentence that contained a variance from the Guidelines, under 18 U.S.C. 3553(a), which placed the Defendant on probation,  [A presentence report recommended a sentence of 30 to 37 months in prison, but the District Court sentenced Gall to 36 months' probation, finding that probation reflected the seriousness of his offense and that imprisonment was unnecessary because his voluntary withdrawal from the conspiracy and post offense conduct showed that the would not return to criminal behavior and was not a danger to society.

These exact factors and situation apply as to the Defendant, Ian Wallace.  It has been more than seven years since he has withdrawn from the ELF organization.  He has reconstructed his life, as a useful member of society and he's seeking a Ph.D. in anthropology with a bright future in the offering.

Moreover, his cooperation with the government has been extraordinary.

**Conclusion**

For all the above reasons, Defendant requests that the Court impose a sentence sufficient but not greater than necessary.  A sentence that contains a variation from the Guidelines.  A sentence much less than that recommended by the Probation will fulfill the purposes of sentencing.

Dated: New York, New York
       18 March 2009

                                                    E. S. PANZER

                                                  Edward S. Panzer, Esq.
                                                  Attorney for Defendant, Ian Wallace
                                                111 Broadway Suite 1706
                                                  New York, NY  10006
                                                  (212) 514-5335

TO:    Robert Holmes Bell
        United States District Judge
        202 W. Washington Street
        Federal Building
        Marquette, Michigan

        Bonnie F. Starr, Pretrial Services Officer
        190 N. Front Street, Suite 202
        Marquette, MI  49855

        Ian Jacob Wallace
        24 Hawkins Road
        Stony Brook, NY 11790

        Hagen W. Frank
        PO Box 208
        Grand Rapids, MI  49501-0208

UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

_____x

UNITED STATES OF AMERICA,                       **Case No. 2:08-cr-39**

                                                **HON. ROBERT HOLMES BELL**

                              Plaintiff,

              -against-

IAN JACOB WALLACE,

                              Defendant.
_____x

### CERTIFICATE OF SERVICE

        I hereby certify that, on March 18, 2009, I electronically filed the foregoing paper with

the Clerk of the Court using the ECF system which will send notification of such filing to the

following:


Dated: New York, New York
        18 March 2009

                                        _____
                                        Edward S. Panzer, Esq.
                                        Attorney for Defendant, Ian Wallace
                                        111 Broadway Suite 1706
                                        New York, NY  10006
                                        (212) 514-5335